Bernadine THOMPSON, Plaintiff,

v.

Albert HUNTINGTON, Mayor, City of Madison & Steve Lyons, President, Jefferson County Commissioners, Defendants.

No. 98–137 C B/G.

United States District Court,
S.D. Indiana,
New Albany Division.

May 21, 1999.

Darlene J Briscoe, Salem, IN, for plaintiff.

Robert L. Barlow II, Madison, IN, James L. Fischer Jr., Boehl Stopher & Graves, New Albany, IN, Wilmer E. Goering II, Eckert Alcorn & Goering, Madison, IN, C.A. Dudley, Shanks, Segal & Shanks, Louisville, KY, for defendant.

### ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANT LYONS' MOTION TO DISMISS

BARKER, Chief Judge.

This matter comes before the Court on Defendant Steve Lyons' motion to dismiss Plaintiff's claims under the First Amendment and the Indiana Constitution Article I, § 9, specifically as applied to municipal officers under 42 U.S.C. § 1983, and Plaintiff's claims under Indiana state law. Defendant argues that Plaintiff cannot maintain any of the causes of action asserted against him because Defendant took no direct action in violation of Plaintiff's rights and because he had no affirmative duty to protect Plaintiff from such violation. Defendant also contends that Plaintiff cannot assert liability against him under § 1983 for the actions of others because no supervisory or other legally relevant relationship existed between himself and the two other individuals. Defendant further claims that even if a supervisory relationship existed, § 1983 liability does not arise through the doctrine of respondeat superior. For the reasons set forth below, we *grant in part* and *deny in part* Defendant's motion.

### STATEMENT OF FACTS

This case arises out of events that took place during a public meeting of the Jefferson County master plan steering committee, held Oct. 15, 1997. Defendants

Albert Huntington ("Huntington") and Steve Lyons ("Lyons"), committee co-chairs, and Plaintiff, Bernadine Thompson ("Thompson"), attended the meeting. *See* Compl. Count 1, ¶ 2. The parties agree that Thompson requested and received permission from Huntington to address the group and that, approximately 45 seconds into Thompson's comments, she digressed into the topic of hog farming in Jefferson County. *See* Compl. Count 1, ¶ 4. Thompson alleges that, at the point she began to convey her views on this topic, Huntington, with Lyons' concurrence, dissolved the meeting, in violation of her right to free speech, made defamatory statements, and caused her severe emotional distress. In the view of other participants at the meeting, Huntington allegedly raised his hand toward his head and moved his finger in a circular motion, stating that Thompson was crazy. *See* Compl. Count 1, ¶¶ 5–8. Thompson claims she suffered public humiliation and severe emotional distress as a result of these events, which quickly became common knowledge throughout the community. *See* Compl. Count 2, ¶¶ 2–5.

Thompson has brought this action against Huntington and Lyons for unlawful abridgment of free speech, defamation, and intentional infliction of emotional distress. Lyons moves to dismiss, arguing that he personally took no direct action toward or against Thompson and that there is no basis for liability on his part with respect to Huntington's conduct. Thompson responds that Lyons' actions support separate claims, apart from Huntington's actions. In his reply, Lyons reiterates his lack of direct action, the absence of any legal duty on his part to Thompson, and the improbability of emotional distress arising from the revocation of Thompson's speaking privileges at the public meeting.

## STANDARD OF REVIEW

 Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief may be granted." When considering a motion under this rule, the Court must examine the sufficiency of the plaintiff's complaint, not the merits of the lawsuit. *See Triad Assocs. v. Chicago Housing Auth.*, 892 F.2d 583, 585 (7th Cir.1989). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts which would entitle her to the relief sought. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991). We accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). However, the plaintiff must respond meaningfully to the motion to dismiss, clearly establishing the legal basis for her claim, in order to stave off dismissal. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir.1999).

## DISCUSSION

Lyons moves to dismiss Thompson's claims, arguing that (1) Lyons took no direct action with regard to Thompson and was under no affirmative duty to prevent the abridgment of her rights, (2) Lyons is not subject to vicarious liability for Huntington's actions because there was no supervisory or other such legal relationship between them, (3) even assuming such a relationship existed, § 1983 does not permit liability under the theory of respondeat superior, (4) Thompson did not experience the abridgment of any legally protected right, and (5) in any event, defamation claims are not actionable under § 1983. Thompson responds that Lyons must assume liability for his own affirmative tortious conduct and that his actions led to the denial of specified rights arising under the First Amendment and the Indiana State Constitution. Because Thompson's pleadings are not specific as to which causes of action are premised on 42 U.S.C. § 1983 as a vehicle for liability and because Lyons offers several defenses to such liability, we will analyze all the al-

leged causes of action in the light of § 1983 requirements.

*Liability Under § 1983 Generally*

Thompson alleges that Lyons' actions at the public meeting violated her First Amendment rights under § 1983. Lyons disputes liability under § 1983, relying on *Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), which holds that principles of respondeat superior do not give rise to liability under the statute. However, *Monell* did not deal with the liability of individuals for their own intentional acts; it specifically articulated limitations on liability of municipalities for the acts of their employees under § 1983. *See Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir.1998). Because Lyons has been sued in his personal capacity, *Monell* affords no basis for dismissal of Thompson's claims against him.

Lyons further contends that there is no meaningful legal relationship between Lyons and Huntington such as to give rise to liability on Lyons' part for the occurrences at the meeting in question. The scant information provided by the parties about the nature of the meeting and the respective roles of the defendants leaves factual issues unresolved, which also precludes dismissal at this juncture.

■ To establish a cause of action under § 1983, the plaintiff must show 1) that the defendant acted under the color of state law and 2) that the defendant's actions deprived the plaintiff of a right secured under the Constitution or other laws. *See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997). In addition, the plaintiff must show that the defendant was personally responsible for the conduct in question. This requirement can be met not only by showing affirmative acts on the part of the defendant, but also by showing, in the case of a supervisor, for example, that the activity in question occurred with the defendant's knowledge, consent or deliberate, reckless indifference. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988).

Thompson's complaint sufficiently alleges that Lyons acted under color of state law and violated her First Amendment rights, but there are significant factual gaps in the pleadings surrounding the personal involvement of Lyons, specifically concerning his approval of Huntington's actions. As we have noted, these cannot be resolved at this juncture, however. If Lyons' affirmative acts or omissions satisfy the three elements of a valid § 1983 claim, liability may properly follow. Because Thompson's complaint adequately sets forth a claim under § 1983, we must deny Lyons' motion to dismiss, which seeks to foreclose all potential liability arising under § 1983, and leave the gaps to be filled by subsequent discovery and/or trial.

*Free Speech Abridgment*

■ Thompson alleges that Lyons took direct action to silence her speech at a public meeting, thereby violating her rights under both the First Amendment and the Indiana Constitution, Article I, § 9. The Indiana Constitutional provision, while not identical to the First Amendment, bears substantial similarity and, in fact, permits no greater breadth of permissible state action. *See Burkhart Advertising, Inc. v. City of Auburn*, 786 F.Supp. 721, 738 (N.D.Ind.1991). For efficiency, we will focus on the federal analysis, remembering that any factual issues that arise will certainly pose similar questions under state constitutional analysis.

■ First Amendment rights and violations typically turn on three factors: the level of protection afforded the speech in question, the nature of the forum where the speech is communicated, and possible justifications for limiting the speech. *See Scroggins v. City of Topeka*, 2 F.Supp.2d 1362, 1368 (D.Kan.1998). Political speech traditionally carries the greatest protection because of its value to "the debate on public issues [which] must be uninhibited, robust and wide-open." *New York Times v. Sullivan*, 376 U.S. at 270, 84 S.Ct. at 720. Although Thompson's precise comments are not detailed in the complaint,

both Thompson and Lyons agree the speech addressed the issue of hog farming in Jefferson County. Drawing all reasonable inferences in favor of the plaintiff, as we must, we assume for the purposes of this motion that Thompson's speech was political speech to be afforded the highest level of First Amendment protection.

▉▉▉▉ Next we consider the forum in which the speech occurred. The three, commonly recognized fora are traditional public, designated public and nonpublic. *See Arkansas Educational Television Comm'n v. Forbes*, 523 U.S. 666, 118 S.Ct. 1633, 1641, 140 L.Ed.2d 875 (1998). Traditional public fora include those locations historically or customarily open to the general public for the free and open expression of ideas; by contrast, a designated public forum is usually opened only by governmental decree for the expression of members of a specified class. *See id.* Although designated public fora may impose requirements that speakers stay on the topic of discussion and speak within their allotted time, viewpoint-based restrictions of speakers violate the First Amendment. *See Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). Content-based speech restrictions are presumptively invalid. *See R.A.V. v. St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992); *Sefick v. Gardner*, 990 F.Supp. 587, 594 (N.D.Ill. 1998). Even limitations placed on speakers in a nonpublic forum must be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). The government purpose in restricting the speech forms the basis for determining the content-neutrality of the action. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989); *People v. Sanders*, 182 Ill.2d 524, 231 Ill.Dec. 573, 696 N.E.2d 1144, 1147 (1998).

The purpose of the meeting, the extent of Thompson's right to speak at the meeting, and Lyons' intent and actions manifesting his concurrence with the decision to adjourn the meeting raise factual issues that may support a cause of action for a First Amendment violation under § 1983. Lyons' pleadings contain contradictory statements as to the topic and purpose of the meeting, and neither party offers information as to the format of the meeting. In his motion to dismiss, Lyons asserts that the meeting focused on selecting a land use consultant (*See* Def. Motion to Dismiss, ¶ c.) However, in his reply brief, Lyons states that the meeting was a "hearing on unified government." Def. Reply to Plaint.Resp.Br., at 2. Clearly more factual development is necessary.

Regardless of the forum, however, there is sufficient evidence in the record to permit a finding that the termination of Thompson's speaking privileges was based solely on the viewpoint she expressed. Lyons' content-based interference with Thompson's expression would satisfy neither the strict scrutiny demanded of speech limitations in a designated public forum nor the reasonableness/content-neutrality requirement of a nonpublic forum. Because Thompson has advanced sufficient evidence to support her First Amendment claim, and because more factual exposition is needed to fully evaluate this allegation, Lyons' motion to dismiss this claim is *denied.*

### Defamation

▉▉▉▉ To bring an action for defamation, a plaintiff must show 1) defamatory meaning; 2) malice; 3) publication; and 4) damages. *See Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994); *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind.Ct.App. 1992). Claims for libel or slander must include information indicating that the defamatory content was spoken or published about the plaintiff. *See* Ind.Code § 34–15–1–1 (1998). Although courts have discussed "negligent defamation," the term typically refers to negligence as to the

truth or falsity of the statement, (see *New York Times v. Sullivan,* 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686 (1964); *Desai v. Hersh,* 719 F.Supp. 670, 673 (N.D.Ill.1989)) not negligent (or the breach of a legal duty to prevent) publication. The publication element seems logically to demand that a defendant actually participate in the communication of the defamatory message. The notion of a duty to prevent defamation conflicts with the nature of this intentional tort, particularly slander, in which bystanders will likely have little opportunity to intervene.

Our review compels us to hold that Thompson's defamation claim cannot stand, largely because Thompson fails to respond meaningfully to Lyons' motion to dismiss. *See Kirksey,* 168 F.3d at 1041; *Stransky v. Cummins Engine Co.,* 51 F.3d 1329, 1335 (7th Cir.1995); *Teumer v. General Motors Corp.,* 34 F.3d 542, 545–546 (7th Cir.1994). Thompson offers no evidence of statements made by Lyons to establish the publication element of a defamation claim, and the lack of any evidence of Lyons' statements precludes any further analysis for defamatory meaning. Despite the explicit mention of Huntington's statements, Thompson appears to have no evidence of statements by Lyons. The mere rudeness that Thompson ascribes to Lyons' passive involvement in the exchange does not satisfy the elements of defamation.

Because this underlying tort claim is not sufficiently established, liability for defamation does not arise under § 1983 as well. Therefore, we *grant* Lyons' motion to dismiss as to Thompson's defamation claim.

### Intentional Infliction of Emotional Distress

■■■■■ Thompson alleges that Lyons' acts amounted to an intentional infliction of emotional distress, which consists of "extreme or outrageous conduct intentionally or recklessly (causing) severe emotional distress to another." *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind.1991), quoting Restatement (Second) of Torts § 46 (1965).

This cause of action hinges not only on the nature of the acts, but also on the actor's state of mind in causing the emotional harm. *See id.*

We find that Thompson's emotional distress claim against Lyons cannot withstand this motion to dismiss. Lyons asserts that the withdrawal of Thompson's speaking privileges could not possibly lead to emotional distress, but the facts alleged seem to point to the defamatory public statements as the root of such distress. No allegations directly address the necessary elements of Lyons' intent and extreme or outrageous conduct. The complaint implies a link between Huntington's statements and Thompson's emotional distress, but Lyons' involvement as alleged is too tenuous to maintain a cause of action for intentional infliction of emotional distress. Accordingly, Lyons' motion to dismiss the intentional infliction of emotional distress claim is *granted.*

### CONCLUSION

Defendant Lyons moves to dismiss Plaintiff Thompson's claims, contending that Lyons took no direct action that violated any legally protected right. Lyons argues that he should not be held liable under § 1983 for the actions of Defendant Huntington because no supervisory or other relationship existed between the two, that defamation actions are improper under § 1983, and that Thompson accordingly has failed to state a claim upon which relief can be granted. As set forth in our discussion above, we find that (1) Lyons may be liable under § 1983 for First Amendment violations, but (2) Thompson has not established a prima facie case for defamation, and (3) Thompson has not established the necessary elements of intentional infliction of emotional distress as to Lyons. Accordingly, we *grant in part* and *deny in part* Lyons' motion to dismiss.

It is so ORDERED.