# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-4223

COUNTY OF MCHENRY,

*Plaintiff-Appellant,*

v.

INSURANCE COMPANY OF THE WEST,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2078—**Matthew F. Kennelly**, *Judge.*

_____

ARGUED DECEMBER 9, 2005—DECIDED FEBRUARY 24, 2006

_____

Before FLAUM, *Chief Judge*, and RIPPLE and WILLIAMS,
*Circuit Judges*.

FLAUM, *Chief Judge*. The County of McHenry, Illinois
("County") purchased an insurance policy from the Insur-
ance Company of the West ("ICW"). ICW settled a
$5 million claim on behalf of the County under the policy,
but reserved the right to seek reimbursement from the
County if it was determined that the policy did not cover
the claim. ICW then sought to invoke the policy's arbitra-
tion clause and resolve the issues of coverage and reim-
bursement before an arbitrator. In response, the County
filed suit, seeking a declaration that ICW cannot require
the County to arbitrate. The district court granted ICW's
motion to dismiss the suit for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6). The County appeals. For the following reasons, we affirm the order of the district court.

## I. Background

ICW issued an insurance policy to the County, which includes an excess public entity coverage ("the policy"). The policy pays on claims made against the County, after the County's self-insurance has been exhausted. The policy contains an arbitration provision, which states in relevant part:

> N. ARBITRATION
>
> In the event that a dispute arises between the Insured and the Company *under this agreement* or concerning when a claim or suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and decision of the arbitrator or arbitrators.
>
> The Company shall have the right, but not the duty, to determine when a claim or suit should be settled and may proceed to settle the claim or suit within its Limit of Liability. The insured and/or the company are entitled to require the other party to submit the dispute to arbitration.

(Emphasis added.)

In August 1999, Indeck Pleasant-Valley, Inc. ("Indeck") sued the County for denying a special use permit to construct and operate an electrical generation facility ("the Indeck claim"). Indeck sought declaratory and injunctive relief and $25 million in damages. The County instructed its broker, Marsh & McLennon, to place ICW on notice and ask ICW to protect the County's rights in the Indeck suit. ICW took the position that, due to an exclusion in the

policy, it did not have a duty to defend or indemnify the County for the Indeck claim.

Between March and October 2002, ICW filed two suits in districtcourt, each seeking a declaration that ICW had no duty to defend or indemnify. At the time ICW filed these suits, it had not made any payment for the Indeck claim. Although not relevant to this appeal, the County was successful in having both suits dismissed for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). On November 21, 2002, ICW paid its $5 million indemnity limit on the Indeck claim and obtained a release of all damages claims asserted by Indeck against the County.

In August 2003, ICW formally demanded arbitration of the coverage issues and appointed an arbitrator. The County rejected ICW's arbitration demands, but selected and appointed John Brechin as an arbitrator, in the event the County was forced to arbitrate. ICW maintains that the County never provided contact information for Brechin, even after ICW requested the information multiple times. ICW then appointed a second member (not Brechin) to the three-member arbitration panel and directed the two existing members to appoint a third member.

ICW, over the County's objections, directed the arbitration to begin, leading to the present suit. The County sued for declaratory judgment in March 2004, arguing that the arbitration agreement in the policy does not apply to the Indeck claim or, alternatively, that ICW had waived its right to demand arbitration by previously filing suits related to coverage of the Indeck claim ("waiver argument"). ICW moved to stay pursuant to 9 U.S.C. § 3 and to dismiss pursuant to Rule 12(b)(6). ICW argued that the arbitrators—not the district court—are to determine whether the parties' disputes are subject to the policy's arbitration clause and that all disputes between the parties are subject to arbitration. The County responded to the Rule 12(b)(6)

motion by arguing: 1) that the issues ICW sought to arbitrate were not covered by the arbitration agreement; and 2) that Illinois law does not allow an insurer to seek reimbursement from an insured. The County did not include its waiver argument in its response to ICW's motion to dismiss.

On October 25, 2004, the district court granted ICW's Rule 12(b)(6) motion and dismissed the suit. According to the district court, the central issues were whether the question of arbitrability should be made by an arbitrator, and alternately, whether the parties' disputes are within the policy's arbitration provision. The district court found that the court, not an arbitrator, should determine the issue of arbitrability. Next, the district court explained that "in the context of the arbitration provision, it is clear that the use of the term 'under this agreement' was meant to cover disputes arising under any part of the insurance policy," including disputes over coverage and reimbursement. Finally, the district court refused to consider whether the policy or Illinois law allow ICW to seek reimbursement, finding that to be a merits issue that must be resolved by the arbitrators.

The County filed a motion under Federal Rule of Civil Procedure 59(e) to amend or alter the judgment. The County argued—as it did in its complaint but not in response to ICW's motion to dismiss—that ICW had waived the issue of arbitrability by bringing two suits on the Indeck claim. The district court denied the County's motion. The district court found that although the County raised the waiver issue in its initial complaint, it should have made the waiver argument in response to ICW's motion to dismiss, and it was too late to raise the issue in a Rule 59(e) motion. The County appeals.

## II. Discussion

"When a district court grants a motion to dismiss under Rule 12(b)(6), our review is de novo." *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005).

> We construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." We shall affirm the dismissal only if it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

*Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005) (internal citations omitted).

The County raises two main issues on appeal. First, the County argues that the district court erred by dismissing its complaint without considering its waiver argument, which was included in the County's complaint but not its response to ICW's motion to dismiss. Second, the County asserts that even if ICW did not waive its right to compel arbitration, the policy's arbitration clause does not cover the parties' dispute over the Indeck claim.

### A. Waiver

According to the County, dismissal at the pleadings stage was improper because the district court failed to consider its alternative grounds for declaratory relief, i.e., its waiver argument. The County maintains that ICW waived its right to demand arbitration related to the Indeck claim by filing two coverage suits that addressed the same coverage issues ICW seeks to arbitrate—the application of the condemnation exclusion and ICW's duties under the policy regarding the Indeck claim. The County included the waiver argument in its complaint, but not in its response to ICW's motion to dismiss.

ICW's sole argument is that the County forfeited its waiver argument by failing to include the argument in its response to ICW's motion to dismiss.

The County disagrees. According to the County, the district court erred by failing to consider whether the complaint stated a claim under any possible theory, including the waiver theory, even if that theory was not presented in response to a motion to dismiss. Additionally, the County implies, in a footnote of its brief, that the district court also erred by denying the County's Rule 59(e) motion to alter or amend the judgment and refusing to consider the merits of the County's waiver argument. The County therefore urges this Court to consider the waiver argument, even if we conclude it was not properly raised below. As a last resort, the County asks the Court to exercise its discretion to consider new arguments and find that ICW has waived its right to demand arbitration of the Indeck claim.

Although this case presents a close question, we agree with ICW that the County has forfeited its waiver argument, and we decline to exercise our discretion to consider that argument now. The County raised two claims in its complaint: 1) that it was entitled to a declaration that ICW does not have a right to arbitrate coverage or reimbursement issues; and 2) that it was entitled to a permanent injunction prohibiting ICW from prosecuting any arbitration proceeding against the County. The declaratory judgment request was based on the County's arguments that the arbitration clause did not cover the parties' dispute and that the County had waived its right to arbitrate. The County discussed the waiver argument in several paragraphs of its complaint.[1] However, the argument was not

---

[1] Paragraph 7 of the County's complaint states that "[t]he County seeks a declaratory judgment that the arbitration agreement in
(continued...)

presented as a separate count or supported by any legal analysis or authority.

Under these circumstances, we cannot say that the district court erred by granting ICW's motion to dismiss. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This rule simply "specifies the conditions of the formal adequacy of a pleading." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). "It does not specify the conditions of its substantive adequacy, that is, its legal merit." *Id.* "[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Although the district court is required to consider whether a plaintiff could prevail under any legal theory or set of facts, *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 2004), it "will not invent legal arguments for litigants," *Stransky*, 51 F.3d at 1335, and is "not obliged to accept as true legal conclusions or unsupported conclusions of fact," *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The County was on notice that ICW sought to dismiss its entire complaint. ICW stated in its motion to dismiss:

---

(...continued)

the Policy does not apply to, and thus [does] not require the County to arbitrate these issues, or alternatively, has been waived by ICW and is otherwise unenforceable." *See also* Complaint ¶ 35 ("even if [ICW] has such a right initially, it had waived its right by prosecuting *ICW I and ICW II*"); ¶ 39 ("ICW had also waived its right to arbitrate them"); ¶ 58 ("Even if ICW had a right to arbitrate coverage, such right was waived or otherwise lost by ICW's action, including twice filing suit and seeking a judicial determination of [coverage issues.]").

As the County's entire action is predicated upon the erroneous notion that the question of arbitrability is left to the sole discretion of the court, as opposed to the arbitrator, the County can plead no set of facts which would entitle it to relief under the complaint.

The County was aware that ICW viewed the issue of who is to decide arbitration as the pivotal issue on its motion to dismiss, and the issue that needed resolution before the district court should consider whether the parties' dispute is covered by the arbitration clause. The County should have argued that the district court must decide the question of waiver before considering whether the issue of arbitrability is one for the arbitrator or the court. In this case, the issues of waiver and arbitrability are linked in such a way that the County should not have sat back and waited for the arbitrability issue to be decided on a Rule 12(b)(6) motion before presenting the waiver argument, and legal support for it, *Stransky*, 51 F.3d at 1335, to the district court. *See also McLeod v. Arrow Marine Transport, Inc.*, 258 F.3d 608, 614 (7th Cir. 2001) (court "not obliged to accept as true conclusory statements of law"); *Northern Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (court not required "to assign any weight to unsupported conclusions of law"); *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996) (court "not compelled to accept . . . conclusory allegations concerning the legal effect of facts set out in the complaint"). The district court did not err by not addressing the waiver argument when considering ICW's motion to dismiss.

Nor did the district court err by refusing to consider the waiver argument when the County included it in a Rule 59(e) motion to alter or amend the judgment. *See* FED. R. CIV. P. 59(e). "A court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that

clearly establishes a manifest error of law or fact." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996). But a Rule 59(e) motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263 (7th Cir. 1995).

Under this standard, the district court properly denied the County's Rule 59(e) motion. There is no evidence in the record to establish a manifest error of law or fact. In deciding a motion to dismiss, the district court is required to consider whether "it appears beyond doubt that the plaintiff cannot prove any set of facts entitling it to relief" under any legal theory. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). In this case, the district court decided the motion based on a record that contained no legal support or analysis from the County demonstrating how ICW's actions prior to demanding arbitration waived ICW's contractual right to arbitrate. Under these circumstances, it was not manifest error for the district court to grant ICW's motion. *See Kirksey*, 168 F.3d at 1041 ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

In another case, *Lekas v. Briley*, 405 F.3d 602, 615 n.8 (7th Cir. 2005), we suggested in dicta that where a defendant in its motion to dismiss does not challenge one of plaintiff's claims and the district court dismisses the unchallenged claim in error, a Rule 59(e) motion may be an appropriate vehicle for correcting that error. In *Lekas*, however, the plaintiff had a least made "passing reference" to the overlooked claim in his response to the motion to dismiss. *Id.* In this case, the County makes no reference to the waiver argument in its response. It is reasonable that the district court did not scour the complaint for the

argument, do its own investigation to determine if the argument had any legal merit, and then deny summary judgment on that ground.

The County asserts that even if it did not properly raise the waiver issue below, it should be able to present it on appeal. The County relies on a line of cases, including *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994), in which we have held that "when reviewing Rule 12(b)(6) motions, we will consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint." *Id.* at 439; *see also Veazey v. Communications & Cable of Chi., Inc.*, 194 F.3d 850, 853 (7th Cir. 1999) (allowing plaintiff to present facts not asserted in opposition to defendant's motion to dismiss under Rule 12(b)(6)).

That exception does not apply here. Although we may consider factual allegations raised for the first time on appeal, we ordinarily will not address new *issues* raised for the first time on appeal. *See Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998) ("In reviewing a motion to dismiss for failure to state a claim, we will allow a plaintiff to make additional factual allegations for the first time on appeal, but we will not entertain new issues." (internal citation omitted)); *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 n.* (7th Cir. 1992) ("GM has filed a motion to strike the plaintiffs' brief on the basis of these 'new facts' as well as new arguments allegedly not made in the district court. . . . Most of the arguments asserted to be new are merely permissible variations on issues that were clearly raised below. . . . The one true issue that the plaintiffs appear not to have raised below is the issue of misrepresentation, which we treat as waived.").

The County is attempting to assert both facts and issues that were not raised in its response to ICW's motion to dismiss. The new facts include the two previous suits filed by ICW and the length of time ICW took to demand arbitration. The new issue is whether ICW's actions resulted in a

waiver of ICW's legal right to demand arbitration of the Indeck claim. Neither the facts nor the issue flow naturally out of those raised in the County's response to the motion to dismiss, which concerned only interpretation of the insurance contract.

According to the County, we should give special importance to the fact that the County raised the waiver argument in its original complaint, but ICW did not address the argument in its motion to dismiss. The County cites *Stewart v. RCA Corp.*, 790 F.2d 624, 631 (7th Cir. 1986), in support of this position. *Stewart*, however, is inapposite. In that case, the Court held that a plaintiff should have been allowed to amend his complaint, even though a motion to dismiss on the original complaint was pending, because the issue the plaintiff sought to clarify was not one that the defendant addressed in its motion to dismiss, and therefore the plaintiff was not required to raise the issue in its response to the motion to dismiss. *Id.* at 631-32. In this case, the County did not attempt to amend its complaint while the motion to dismiss was pending, in order to clarify the waiver argument. Instead, the County ignored the waiver argument in its responsive brief and did not raise it again until its Rule 59(e) motion. Under these circumstances, we see no reason to give special weight to the fact that the County put the waiver argument (without legal citation or analysis) in its original complaint.

Finally, the County argues that the Panel has discretion to consider an argument raised for the first time on appeal and that it should exercise that discretion here. "In the rare case in which failure to present a ground to the district court has caused no one—not the district judge, not us, not the appellee—any harm of which the law ought to take note, we have the power and the right to permit it to be raised for the first time to us." *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749 (7th Cir. 1993). Without

addressing whether our consideration of the waiver issue would cause any harm, we decline to exercise our discretion in this case. The County, represented by able legal counsel, should have exercised care in responding to the motion to dismiss and raised all the arguments it had against the motion. It is only logical that the County would argue that ICW had waived the right to arbitrate, when ICW moved to dismiss based on the fact that the insurance policy required arbitration. Because we find that ICW cannot raise its waiver argument for the first time on appeal, we need not address whether ICW waived its right to demand arbitration.

*B. Arbitration*

We now reach the primary issue of this appeal: whether the district court erred by finding that the policy's arbitration clause applied to the parties' dispute over the Indeck claim. This dispute concerns whether the term "agreement" contained in the arbitration provision relates to the policy as a whole or only to the arbitration provision. The arbitration provision states:

> In the event that a dispute arise between the Insured and the Company under this *agreement* or concerning when a claim or suit should be settled or the amount of such settlement, such dispute shall be subject to arbitration and both parties shall be bound by the findings and decision of the arbitrator or arbitrators.

(Emphasis added.)

The insurance contract does not define "agreement" or "policy." The contract is comprised of several provisions: 1) "Common Policy Conditions"; 2) two "coverage parts" (Excess Public Entity Liability and Commercial Auto); and 3) several endorsements. The parties both refer to the excess public entity liability coverage as the "policy." This

coverage contains seven sections: "Insuring Agreement"; "Defense and Settlement"; "Supplementary Payments"; "Company's Limit of Liability"; "Exclusions"; "Definitions"; and "Conditions." The "Conditions" section consists of the parties' agreements with respect to premiums, inspection and audit, changes, cancellations, appeals, arbitration, and acceptance. Condition "N" is the arbitration provision.

According to the County, the district court erred by construing the policy terms "agreement" and "policy" to be synonymous. The County maintains that the plain meaning of "agreement" is a reference to the terms of the arbitration provision itself, not to the Policy in its entirety. Thus, the arbitration agreement does not extend to all disputes under the policy, but only to disputes under the arbitration provision, regarding whether a claim should be settled, and regarding the amount of settlement. Finally, the County points to several places within the insurance contract where the terms "agreement" and "policy" are used in distinct, non-interchangeable ways.

ICW argues in response that the term "agreement" refers to the insurance policy as a whole. ICW also maintains that if the policy is ambiguous, any doubts as to its scope should be decided in favor of arbitrability. ICW emphasizes that there is presumption of arbitrability: "[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998).

Additionally, ICW points to several rules of contract interpretation to support its reading of the insurance contract. According to ICW, the County's interpretation would force the Court to add language to the arbitration clause; that is, "this agreement" in the arbitration clause would become "this arbitration agreement." Moreover, ICW argues that construing the insurance contract to be com-

posed of dozens of separate "agreements" conflicts with the plain and ordinary meaning of "agreement." ICW explains:

> Condition N of the policy does not identify itself as a separate "agreement," but merely as a condition of the coverage conferred under the policy's central Insuring Agreement. Nor is there any indication of the parties' separate negotiation, assent or consideration for this Condition, only the parties' agreement to the policy as a whole.

Finally, ICW argues that the County's interpretation is unnecessarily restrictive:

> [T]he County's interpretation of the terms "this agreement" would render the operative words in the arbitration provision to be virtually without meaning. The arbitration clause provides that the following classes of disputes must be arbitrated: (a) "when a claim should be settled," (b) "the amount of such settlement," and (c) "a dispute aris[ing] between the Insured and the Company under this Agreement." If, as the County argues, "a dispute aris[ing] between the Insured and the Company under this agreement" refers only to disputes arising under the arbitration provision itself, then only the mechanics and procedures of the arbitration itself would be arbitrable under the part of the arbitration clause, and not any substantive disputes as to coverage. Thus, while disputes concerning "when a claim or suit should be settled" and "the amount of such settlement" could be arbitrated, no dispute arising under the policy could be arbitrated, except for the arbitration procedures themselves. This is an incredibly strained interpretation of the contract language and would produce a truly anomalous result: an arbitration clause contained in an insurance policy which authorizes no arbitration for any coverage disputes arising under the policy.

After reviewing the parties arguments, we conclude that the district court properly found the parties' dispute over the Indeck claim to be subject to arbitration. The County is unable to support its argument that the plain meaning of "agreement" in the arbitration provisions refers only to the arbitration provision itself. Instead, we find that the term "agreement," as used in the insurance contract, is ambiguous.

Contrary to the County's argument, looking at how the term "agreement" is used in other places within the insurance contract does clear up this ambiguity, and it certainly does not lead us to the conclusion that the arbitration provision is itself an "agreement." The County points to these two examples from the insurance contract: Paragraph B ("Changes") of the "Common Policy Conditions" states that "[t]his policy contains all the agreements between you and us concerning the insurance afforded." Paragraph O of the "Conditions" section (which is a subpart of the public entity liability coverage) states that "[i]t is understood and agreed that this policy embodies all agreements between the Company and the Insured relating to this insurance." At most, these examples show that the parties intended the insurance contract to be integrated and supercede any previous "agreements"—such as oral or written assurances made during negotiation of the contract. *Cf. Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002) ("[A]n integration clause prevents a party to a contract from basing a claim of breach of contract on agreements or understandings, whether oral or written, that the parties had reached during the negotiations that eventuated in the signing of a contract but that they had not written into the contract itself."); *Much v. Pac. Mut. Life Ins. Co.*, 266 F.3d 637, 640 (7th Cir. 2001) (considering an integration clause stating, "This contract supercedes all previous contracts and agreements between [CICI] and

[Pacific Mutual] made for the procurement of insurance products").

Additionally, the County maintains that because the term "policy" refers to the insurance contract as a whole, the term "agreement" cannot also refer to the insurance contract as a whole. This is debatable. Even if "agreement" didn't refer to the insurance contract as a whole, it could refer to some other, smaller section of the insurance contract—not just to the arbitration provision itself. We agree with ICW that there is no indication that the arbitration provision (Condition N of the public entity liability coverage) is a separate "agreement" between the parties. Nor is there any indication that the arbitration provision was negotiated or considered separately from the rest of the insurance contract.

We are also persuaded by ICW's argument that the County's reading of "agreement" narrows the arbitration provision beyond what would be a logical result. Under the County's reading of the insurance contract, only the arbitration procedures themselves, in addition to whether to settle and in what amount, would be arbitrable issues. No disputes arising under the policy concerning coverage or defense would be arbitrable. Although this result may be what the parties intended, it certainly is not clear from the plain language of the arbitration provision.

As this Court has stated, "[w]hether an issue is subject to arbitration is a simple matter of contract interpretation. If the contract is ambiguous, 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (internal citation omitted); *see also id.* ("[A] court should compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . .'" (internal citation omitted)); *Cont'l Cas. Co. v.*

*Am. Nat. Ins. Co.*, 417 F.3d 727, 731 (7th Cir. 2005) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (internal citation omitted)). In this case, there is certainly doubt regarding the scope of the arbitration clause. It is subject to several reasonable interpretations, of which the County's is not the most reasonable. Thus, we agree with the district court that the parties' dispute over the Indeck claim is subject to arbitration.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's order dismissing the County's complaint.

A true Copy:

      Teste:

 

                _____

                *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*